■ MARIA R. M. RODRIGUEZ, Plaintiff, v CITY OF NEW YORK, Respondent, and HARRY WALLACH, Appellant. HARRY ZEITLAN, Respondent. — Order, Supreme Court, Bronx County (Louis Fusco, J.) entered June 8, 1984, which, upon reargument, confirmed the report of the Special Referee and denied an attorney's lien to the movant appellant Harry Wallach, reversed, on the law and on the facts, without costs, and it is ordered that Wallach is entitled to 50% of the attorney's fee received by plaintiff's trial counsel, Harry Zeitlan.

This appeal is upon a proceeding to determine the lien of a referring attorney, Harry Wallach, after the successful prosecution by trial counsel Harry Zeitlan of an action for wrongful death of the plaintiff's decedent. The matter was referred by Trial Term to a Special Referee for hearing and report. Trial Term confirmed the referee's report, which recommended a finding that Wallach was not entitled to a lien because the evidence did not establish that plaintiff Maria Rodriguez had signed a retainer agreement with Wallach. We disagree.

It is undisputed that in June 1975 plaintiff's husband Israel Rodriguez was beaten to death by a police officer, and that the officer's conviction of homicide was affirmed by this court (*People v Ryan,* 67 AD2d 639). Decedent's family was advised to retain an attorney. Plaintiff's sister-in-law, Maria Marrero, sought the advice of her church pastor, Reverend Oswald Godoy, who recommended Harry Wallach as an attorney who had represented a neighborhood church in various matters. Mrs. Marrero testified that she arranged a meeting in late June 1975 between Mr. Wallach and Mrs. Rodriguez at the latter's apartment, and that she saw Mrs. Rodriguez sign a retainer agreement and give it to Wallach. This meeting and the signing of the retainer agreement are the only pertinent facts in dispute, as will be discussed below.

Wallach thereafter referred the case to Harry Zeitlan, a trial attorney who had in the past successfully prosecuted two matters referred to him by Wallach. In October 1975, Zeitlan filed a sliding-scale retainer statement with the New York State Judicial Conference, naming himself and Mr. Wallach as the attorneys for Mrs. Rodriguez. In August 1976, Wallach sent Zeitlan an agreement which provided in pertinent part: "This will confirm the retention of you by me to act as 'of counsel' in the above action. [*Rodriguez v City of New York.*] The terms of our agreement are as follows: I am to receive ½ of your fee after the deduction of your expenses, whether by settlement conference or judgment." Zeitlan executed a copy of the agreement and returned it to Wallach.

During the period 1975 through 1978 the two attorneys exchanged correspondence about the case and exchanged for examination and comment legal documents and photographs to be used in connection with the trial. Wallach also had numerous telephone conferences with Mrs. Marrero, who acted as interpreter between him and Mrs. Rodriguez, who at that time was unable to speak English. On no occasion did Zeitlan ever request services of Wallach that Wallach declined to perform. On May 7, 1981 a jury brought in a verdict for plaintiff in the amount of $907,763 including interest, an amount thereafter reduced to $673,440 upon an appeal to this court. (*Rodriguez v City of New York*, 92 AD2d 813, *affd* 62 NY2d 673.)

On May 27, 1981, Zeitlan wrote to Wallach that "I discharged you in this case more than five years ago by word and by letter. You have never contributed any service to this case and, accordingly, I have repudiated any interest that you claim to have in this matter." At the hearing before the referee, Zeitlan was unable to produce any letters to confirm the earlier purported discharge, but he testified that he told Wallach in or about 1980: "What do you mean I should keep you posted? Who are you anyway? I never seen a retainer from you or by you." On June 16, 1981 Wallach filed an attorney's lien, the determination of which is the subject of this appeal.

As stated earlier, the only factual issue is whether there was a meeting in June 1975 between Wallach and Mrs. Rodriguez at which a retainer agreement was executed. At the hearing before the Special Referee, Wallach and Mrs. Marrero testified unequivocally that such a meeting took place and that Mrs. Rodriguez executed a retainer agreement at that time. As to whether she had signed the retainer, Mrs. Rodriguez testified:

"A. I do not remember. I was very sick with nerves. I was sick.

"Q. So you were not sure?

"A. I cannot say if I signed it because I do not know."

It is not entirely without significance that when Mrs. Rodriguez was asked in January 1983, at the hearing before the referee, whether she remembered signing an affidavit on September 20, 1982 which she had in fact signed, Mrs. Rodriguez stated, "I don't remember."

Mr. Wallach was not able to produce the retainer agreement at the hearing. He explained that when he got Zeitlan's letter of May 27, 1981, he went to see Mrs. Rodriguez and showed her several documents, including the retainer, that she left the room momentarily with these papers and when she returned them to him he placed them in his file without examining them. Several

weeks later he went through his file and could not find the retainer agreement. While we think it unlikely that Mrs. Rodriguez deliberately withheld that document, common experience does not eliminate the alternative explanation that the document was simply misplaced.

The positive and direct testimony of Mr. Wallach and Mrs. Marrero that a retainer agreement was executed in June 1975 must be accorded substantially more weight than Mrs. Rodriguez's inability to recall whether she signed the retainer agreement. Our review of the entire record persuades us that Mrs. Rodriguez did in fact execute a retainer agreement with Mr. Wallach in June 1975, that he contributed to some extent toward the earning of the fee, and that he is accordingly entitled to 50% of the fee earned by Harry Zeitlan as set forth in their written agreement providing for same. (*Sterling v Miller,* 2 AD2d 900, *affd* 3 NY2d 778; *Jontow v Jontow,* 34 AD2d 744; *Oberman v Reilly,* 66 AD2d 686.) Upon this view of the facts it is unnecessary to determine whether there exists between the two attorneys an implied-in-fact contract to divide the fee. (*See, Carter v Katz, Shandell, Katz & Erasmous,* 120 Misc 2d 1009.) Concur — Sandler, J. P., Sullivan, Milonas and Kassal, JJ.